**LAULETTA BIRNBAUM, LLC**
*A New Jersey Limited Liability Company*
By:    Gregory A. Lomax, Esq.
        glomax@lauletta.com
        Robert A. McKinley, Esq.
        rmckinley@lauletta.com

591 Mantua Blvd., Suite 200
Sewell, NJ 08080
Telephone:  856-232-1600
Facsimile:  856-232-1601
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **The Senior Store, LLC**, | : |
| *Plaintiff,* | : |
| v. | : **CIVIL ACTION** |
| **The Senior Store, Inc., Nick Bolletino, Amanda Bolletino, and Eric Mass,** | : **No. 19-cv-** |
| *Defendants.* | : |

## VERIFIED COMPLAINT

Plaintiff, The Senior Store, LLC, by and through its attorneys, Lauletta Birnbaum, LLC,

for their complaint against The Senior Store, Inc., Nick Bolletino, Amanda Bolletino, and Eric

Mass, allege upon knowledge as to itself and otherwise upon information and belief as follows:

## PARTIES

1.      Plaintiff, The Senior Store, LLC, ("PTSS") is a New Jersey limited liability company, with its principal place of business located at 123 W. Clements Bridge Road, Runnemede, NJ 08078.

2.      Defendant The Senior Store, Inc., ("DTSS") is a Pennsylvania corporation, with a registered address of 272 Carpenter St., Philadelphia PA 19147, and is also registered in the state of New Jersey as a foreign for-profit corporation.

3.      Defendant Nick Bolletino ("Mr. Bolletino") is an individual, with, upon information and belief, a home address of 511 N. Clinton Ave., Wenonah, NJ 08090.

4.      Defendant Amanda Bolletino ("Mrs. Bolletino") is an individual, with, upon information and belief, a home address of 511 N. Clinton Ave., Wenonah, NJ 08090.

5.      Defendant Eric Mass ("Mass") is an individual with, upon information and belief, a home address of 6 Eagle Rd., Audubon, NJ 08106. (Mr. Bolletino, Mrs. Bolletino and Mass collectively hereafter the "Individual Defendants").

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this case under 28 U.S.C. §1331.  To the extent that this cause of action also arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, jurisdiction is expressly conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). This Court has supplemental jurisdiction under Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

7.      Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) and/or (2) because a defendant resides within this judicial district and/or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## NATURE AND SUMMARY OF THE ACTION

8.      This is an action for false designation of origin and unfair competition, unregistered trademark infringement under the Lanham Act, common law trademark infringement and unfair competition, unjust enrichment, cyberpiracy, consumer fraud, and breach of fiduciary, arising out of Defendants' adoption and use of Plaintiff's THE SENIOR STORE trademark, and usurping its domain name www.theseniorstore.com. After being trained by Plaintiff and working for Plaintiff's organization for several months to learn about its successful business model, Defendants, without authorization from Plaintiff, developed a plan and scheme, and recently have created a business using Plaintiff's trademark, THE SENIOR STORE, for the identical services and in direct competition with Plaintiff, in the Delaware Valley region.

## FACTUAL BACKGROUND

**Plaintiff's "The Senior Store" Business**

9.      Patricia MacAdams ("MacAdams") is a licensed independent Managing General Agent for Pinnacle Financial Services ("Pinnacle"), an insurance marketing organization with a focus on Medicare benefits.  MacAdams is licensed insurance agent in New Jersey, Pennsylvania, Delaware, Maryland, and the District of Columbia.  PTSS, under the THE SENIOR STORE brand, has over 4500 customers spanning all of these territories, as well as in South Carolina and Florida.

10.      Pinnacle provides its insurance marketing organization services by contracting with a series of independent agents and assigning each within an "Agent Hierarchy."  The independent agents facilitate contracts between customers and insurance companies, such as

Aetna, United Healthcare, Independence Blue Cross, Horizon, Humana, Well Care, and several others. The level in which an agent is positioned in the Agent Hierarchy is predominantly determined based on production --  which is the number of contracts an agent or agency closes as between customers and the insurance companies.

11.    At the top of the hierarchy is Pinnacle, followed downline by a Supervisory General Agent, a Managing General Agent, a General Agent, and lastly, "street level" Agents. MacAdams' upline Supervisory General Agent is Divine Insurance, located in center city Philadelphia, PA.  Compensation for services provided to the end customer under this business model flows down the Agent Hierarchy.

12.    the business of PTSS is carried out according to this hierarchy through its agents.

13.    In May 2013, and in furtherance of her relationship with Pinnacle, MacAdams began to build a business under the brand THE SENIOR STORE, offering Medicare assistance, life insurance, long-term care insurance, financial planning, advice on benefits from employers, legacy benefits, final expense insurance, and supplemental insurance, among others  to individuals planning to retire, or already in retirement (the "PTSS Services").

14.    In coordination with Pinnacle, MacAdams recruited and trained street level agents in her downline.   Working through MacAdams, as Supervisory General Agent, the street level agents (as well as other Supervisory General Agents affiliated with PTSS) generate, follow and pursue customer leads.

15.    Since May 2013, MacAdams promoted the services offered through her and her downline street level agents under the brand THE SENIOR STORE.

16.    To promote the launch of THE SENIOR STORE business, MacAdams sent invitations to, issued a press release for, and hosted a Grand Opening ribbon-cutting ceremony at

its original location in Bellmawr, NJ on May 15, 2013. The Grand Opening drew over 100 people including the mayor of Bellmawr, New Jersey, and one of our nation's most famous historical senior citizens, Ben Franklin (Ward Larkin, professional impersonator).

17.     In August 2013, MacAdams issued a second press release reporting on the Grand Opening, and announced that THE SENIOR STORE was offering its services to residents of New Jersey, Delaware and Pennsylvania. The announcement informed the public that the services offered under THE SENIOR STORE brand are available via house calls, walk-in meetings, and through scheduled appointments.

18.     In February 2014, MacAdams caused to have formed Plaintiff, The Senior Store, LLC.

19.     Since at least May 2013, PTSS and its agents have made sales, solicited and continue to solicit over 100,000 potential customers under THE SENIOR STORE brand in New Jersey, Pennsylvania, Delaware and Maryland (the "Delaware Valley Region"), as well as in the District of Columbia, South Carolina and Florida (the "Territories") .

20.     Through the work of MacAdams and other experienced insurance executive partners, THE SENIOR STORE experienced substantial growth and notoriety in the Delaware Valley Region. PTSS's number of street level agents has multiplied six-fold since its inception – growing from 4 agents to now almost 30. Indeed, PTSS's success and the widespread notoriety of its brand in the Delaware Valley Region is measured in part by the rapid growth of its street level sales force and expansion of its physical present in the region.

21.     In addition to its agents offering insurance services under PTSS's THE SENIOR STORE BRAND in the Territories, PTSS has also opened an additional walk-

in/appointment/information center in Berlin, NJ, and has confidential plans for expansion in the Region that Mr. Bolletino was aware of while working with MacAdams.

22.     From its inception, PTSS has focused on building goodwill and brand recognition of THE SENIOR STORE trademark.  As part of its branding strategy, PTSS consistently features its THE SENIOR STORE mark as the banner under which its business operates.

23.     PTSS has spent tens of thousands of dollars to strategically market, advertise, and promote its brand through a variety of media, such as on billboards, direct mail pieces such as flyers, postcards and quarterly newsletters, and on business cards, lawn signage, and magnetic signs on vehicles prominently displaying THE SENIOR STORE trademark.

24.     PTSS also sponsors and participates in weekly, bi-weekly, monthly and annual events at various building complexes, care facilities, clubs, libraries, and other locations to promote its services under THE SENIOR STORE trademark.  At these events, PTSS educates attendees on the health and financial options available to the elderly and offers its insurance services.

25.     Brand recognition of THE SENIOR STORE is further strengthened through word-of-mouth advertising by its agents in the tri-state area and beyond.

26.     Plaintiff further promotes the PTSS Services by partnering with social networking sites like Facebook (see https://www.facebook.com/TheSeniorStoreNJ/?ref=br_rs and https://www.facebook.com/The-Senior-Store-1395998910452754).

27.     PTSS has also launched its own website (http://www.gotmedicare.com) through which it advertises its services.

28.     As a result of its advertising, marketing and promotional efforts, as well as the quality of services it provides under its THE SENIOR STORE brand, PTSS has experienced a 500% growth rate in its client base since 2015.

29.     PTSS's customers, potential customers, agents, and the insurance companies with whom they do business, have come to identify THE SENIOR STORE as an established and reputable insurance agency service provider in the Delaware Valley region.

30.     To further protect its THE SENIOR STORE trademark, MacAdams filed a U. S. Trademark Application in the United States Patent and Trademark Office for the mark "The Senior Store" on May 18, 2018, which has been assigned serial number 87/927,545.

**Defendants' Connection to Plaintiff's THE SENIOR STORE Business**

31.     Upon information and belief, since at least September 2017, Defendant Nick Bolletino, and later along with Defendants Amanda Bolletino and Eric Mass, have engaged in pattern of behavior to infiltrate PTSS's business to access its confidential business practices and gain an understanding of the manner by which PTSS has succeeded, and then use all of the above information to launch a directly competing business in the Delaware Valley Region in October 2018 under Plaintiff's THE SENIOR STORE brand.

32.     In or about September 2017, Defendant Nick Bolletino became a downline street level agent for Pinnacle under MacAdams in the Pinnacle Agent Hierarchy.   Mr. Bolletino had just recently entered the Medicare Advantage space and had limited experience in it as an agent. Therafter, MacAdams, who has over a decade of experience in the Medicare Advantage space, trained Mr. Bolletino for several months on how to market, promote, and sell PTSS's services, and supported his efforts to grow a downline business under plaintiff's well-known THE SENIOR STORE brand.

33. MacAdams is responsible for the vast majority of Mr. Bolletino's training in the Medicare Advantage space, and provided countless hours of teaching Mr. Bolletino, which dramatically cut down the amount of time he otherwise would have expended if he embarked to learn it on his own.  During this period, MacAdams also fed Mr. Bolletino countless leads to pursue, and MacAdams assigned some of her own clients to Mr. Bolletino.

34. Upon information and belief, prior to his relationship with PTSS,  Ms.

35. Upon information and belief, Defendant Amanda Bolletino is married to Defendant Nick Bolletino and possesses computer skills sufficient to design logos and perform other computer-related work, including web-site development.  In early 2018, PTSS hired Mrs. Bolletino to build a Customer Relationship Management (CRM) System for PTSS and to design a new logo for THE SENIOR STORE.  In connection with this work, Mrs. Bolletino had access to PTSS's confidential business information and processes.

36. In January 2018, Mr. Bolletino suggested that PTSS invest in search engine optimization services and rebuild PTSS's website and internet presence.  PTSS maintained the website www.theseniorstore.org at that time, but had inadvertently allowed its prior registration of the domain www.theseniorstore.com lapse (the ".COM Domain.").

37. Shortly after Mr. Bolletino made this suggestion, MacAdams asked Mr. Bolletino to look into the cost to re-purchase the .COM Domain.  Rather than doing that, however, PTSS learned that Mr. Bolletino had purchased the domain www.theseniorstore.com for his own benefit, without notifying PTSS and without PTSS's authority.  Although it was not a strategic marketing priority for MacAdams to build a website-based internet marketing campaign for Plaintiff's THE SENIOR STORE brand at that time, PTSS paid Mr. Bolletino $4000 for the

domain and for Mrs. Bolletino to work on the CRM System and put together a simple logo for the business.

38.     Upon information and belief, to assist Mr. Bolletino in generating what he believed would create leads and more business for him as an agent under MacAdams' THE SENIIOR STORE business, Mrs. Bolletino intended at that time to create a website on the .COM Domain for PTSS.

39.     By March 2018, it was MacAdams understanding that the website was still under development, but that it was nearing completion.  As such, and in continued support of Mr. Bolletino's effort to generate business, MacAdams asked Mrs. Bolletino for a "theseniorstore.com" email address to be printed on thousands of direct mail pieces that PTSS was ordering.  Mrs. Bolletino provided the address help@theseniorstore.com.

40.     Shortly after the mailing went out to thousands of potential customers, MacAdams asked the Bolletino's for access credentials to the email account as well as to the .COM Domain, but the Bolletino's refused.

41.     Despite repeated requests thereafter, the Defendants have not provided, and PTSS still does not have, the credentials and passwords to access or control the content on the .COM Domain, nor access to the help@theseniorstore.com email account.  Upon information and belief, such credentials were and continue to be in the possession, custody or control of Defendants Amanda Bolletino and/or Nick Bolletino and are being used to build a business in direct competition with Plaintiff's business.

42.     By late spring 2018, Mr. Bolletino was no longer producing business for his upline through MacAdams and it became clear to MacAdams that Mr. Bolletino was seeking to be released from his contract with Pinnacle.     Since May 2018, Mr. Bolletino has not

participated in events on behalf of Plaintiff, coordinated with MacAdams to grow his downline business, nor produced any sales in his upline to Pinnacle through MacAdams, other than one application in August 2018.  PTSS learned that, over the course of Mr. Bolletino's affiliation with it, he wrote several applications for customers that did not fit their respective insurance needs, resulting in numerous chargebacks up and down the compensation structure as those customers began to realize it and disenroll in those programs.

43.     Upon information and belief, Mr. Bolletino served a "Release" on Pinnacle in or about June 2018, which effectively terminates his relationship with Pinnacle, and will remove him from the Agent Hierarchy in the level below MacAdams effective in or about January 2019.

44.     Defendant Eric Mass has been and continues to be a downline street level agent under MacAdams since March 2018, and was trained by MacAdams from March 2018 through approximately May 2018.   Since May 2018, however, Mass has not participated in events on behalf of Plaintiff nor produced any sales in his upline to Pinnacle through MacAdams, and instead has joined Mr. Bolletino in building a competing business under THE SENIOR STORE brand.

**Defendants Theft of "THE SENIOR STORE" Domain and Infringement of its Trademark**

45.     In October 2018, after commandeering and squatting on PTSS's theseniorstore.com domain, Defendants launched an internet marketing campaign and a brick and mortar business using THE SENIOR STORE trademark in direct competition with PTSS.

46.     After learning about Defendant's launch, PTSS discovered that, in or about August 2018, the Individual Defendants conspired together to form Defendant The Senior Store, Inc, and applied for a New Jersey Certification of Insurance Licensure, which was issued on August 31, 2018.

47.     In or about October 2018, Defendants launched the www.theseniorstore.com website, without PTSS's authorization, offering services identical to those offered by PTSS, including Medicare advantage plans, Medicare special-needs plans, and Medigap plans (hereafter "Related Services").

48.     From the time Defendants purchased the .COM Domain until at least October 2018, the .COM Domain was a placeholder and did not advertise or offer any goods or services.

49.     Like PTSS, Defendants offer to meet potential customers in their homes, and defendants' brick and mortar stores, or via telephone. An image from defendants' website is shown below.



50.     In or about October 2018, Defendants also launched a Facebook page using

PTSS's trademark THE SENIOR STORE, claiming to be "the first of its kind," even though

Defendants were well aware of PTSS's two locations in South Jersey, and plans for expansion in

and beyond the Delaware Valley Region.  An image from defendants' Facebook page is shown below:



51.    Upon information and belief, in or about October 2018, Defendants opened two Philadelphia offices; one at 2929 Arch St., Suite 1700, and the other at 2208 S. Broad Street.

52.    Defendants' advertise their stores as THE SENIOR STORE Medicare enrollment centers, "dedicated to empowering recipients in their management of Medicare and retirement costs", and claim to serve potential customers in the same region in which plaintiff serves its customers under THE SENIOR STORE brand, namely the Greater Philadelphia Metro Region, as well as surrounding areas such as South Jersey, Bucks County, Chester County, and Delaware County.

53.    Defendants also claim to have partners with "every major and regional carriers that are leaders in health insurance" under THE SENIOR STORE brand. An image of an article posted on Defendants' Facebook page, making these claims is shown below:



## The Senior Store. First of its kind!?

THE SENIOR STORE · MONDAY, OCTOBER 15, 2018

The Senior Store is a Medicare Enrollment Center dedicated to empowering recipients in their management of Medicare and retirement costs. In our organization, we specialize in assessing and tailoring specific options surrounding Medicare decisions.

We serve the Greater Philadelphia Metro Region as well as surrounding areas such as South Jersey, Bucks County, Chester County, & Delaware County.

We have designed our office with a "nostalgic" feel, decorated with keepsakes from the 60's and 70's. We want to pay homage to what a great and historic city Philadelphia is by giving back to our elderly neighbors, those on disability, and everyone in between.

We have partnered with every major and regional carriers that are leaders in health insurance. With carriers such as Aetna, Clover, UHC, Humana, Horizon, and more, we are able to provide the proper coverage needed for a healthy and secure future.

Come and visit our office, conveniently located on 2208 S. Broad St. in Philadelphia, right across the street from TD Bank & Starbucks. You can also visit our website at www.TheSeniorStore.com.

14

54.    Medicare open enrollment for 2019 coverage was from October 15, 2018 to December 7, 2018. As such, Defendants appear to have targeted October 2018 as the date on which to begin trading off of the goodwill established by PTSS's THE SENIOR STORE brand, launch its Website, open its stores, and roll-out its marketing campaign.  This scheme and this date would allow them the best opportunity to garner cash flow during the busiest time of the year for the business and to gain momentum into 2019.

55.    To make matters worse, PTSS has recently learned that when third parties ask defendants whether Defendants' THE SENIOR STORE is the same company as Plaintiff's THE SENIOR STORE, Defendants tell them that they are affiliated with Plaintiff, when they clearly are not.

56.    PTSS has not authorized Defendants to distribute, provide, promote, advertise, offer for sale or sell the PTSS Services or the Related Services that bear the "THE SENIOR STORE" trademark.

57.    As a result of the Defendants' conduct, PTSS's domain name and on-line presence has been completely misappropriated and commandeered by Defendants to the exclusion of the business' true ownership.  In addition, Defendants' unlicensed and illegal sale of services under PTSS's THE SENIOR STORE trademark, both through online marketing, its stores in Philadelphia, and via any sales agents and employees it contracts with, has the substantially likelihood of causing widespread consumer confusion or misunderstanding as to the source, sponsorship, approval, or certification of PTSS's services.  Additionally, as a result of Defendants' illegal and maliciously misappropriation of the PTSS's trademark, Defendants have caused, and will continue to cause, a substantial and unjustified interference with the PTSS's customers, customer base, the consuming public, and PTSS's suppliers and vendors.

58.     Upon information and belief, the Individual Defendants took with them when they suddenly departed Plaintiff, PTSS's proprietary information, including, but not limited to, Plaintiffs' customer lists, potential customer lists, and marketing strategies.

59.     Defendants' conduct has been undertaken in an intentional effort to infringe PTSS's trademark, and to thereby usurp PTSS's valuable goodwill in its brand, in an unlawful effort to seize customers in PTSS's market using THE SENIOR STORE name.

60.     This conduct has and will continue to cause the PTSS substantial and irreparable harm for which there is no adequate remedy at law, in addition to causing significant pecuniary loss and damage.

## COUNT ONE
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. §1125(a))

61.     Plaintiff hereby repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

62.     This cause of action for false designation of origin and unfair competition arises under §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

63.     The Related Services distributed, promoted, provided, sold and offered for sale by Defendants under the "THE SENIOR STORE" mark since a date subsequent to PTSS's first use, are identical, closely related, and complementary to the services PTSS promotes, provides, offers for sale and sold under its "THE SENIOR STORE" brand.

64.     By willfully misappropriating and using trademarks marks that are identical and/or highly similar to PTSS's "THE SENIOR STORE" mark, Defendants have misrepresented and falsely described to the public the origin and source of the Related Services and have created

a likelihood of confusion among the public and the ultimate consumers as to both source and sponsorship of the Related Services.

65.     Defendants' unlawful and unauthorized distribution, promotion, offer for sale and sale of the Related Services creates express and implied misrepresentations that the Related Services were authorized, approved of and/or sponsored by PTSS, all to Defendants' profit and PTSS's great damage and injury.

66.     Defendants' use of the "THE SENIOR STORE" mark in connection with the Related Services constitutes a false designation of origin and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     Upon information and belief, Defendants will continue to make such false designations of origin, representations and descriptions in advertisements for and in connection with the provision of the Related Services in commerce unless restrained by this Court.

68.     As a direct and proximate result of Defendants' infringement of Plaintiff's "THE SENIOR STORE" mark, PTSS has been damaged.  Plaintiff is thus entitled to the recovery of damages, multiple damages, reasonable attorney's fees, prejudgment interest and costs pursuant to 15 U.S.C. § 1117(a) and (b).

69.     PTSS has no adequate remedy at law, and if Defendants' activities are not enjoined, Plaintiff will suffer immediate and continuing irreparable harm and injury to its business and to its reputation, and to the goodwill associated with its "THE SENIOR STORE" marks.

## COUNT TWO

## UNREGISTERED TRADEMARK INFRINGEMENT

## (15 U.S.C. § 1125(a))

70.     Plaintiff repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     Defendants' knowing adoption and use of a mark that is identical to Plaintiff' "THE SENIOR STORE" mark, without the consent of PTSS, will likely cause confusion among ordinary consumers as to the source the of PTSS's Services.

72.     Defendants' intentional misappropriation of the "THE SENIOR STORE" mark will destroy the valuable brand equity that Plaintiff has built into their mark, harm the value of Plaintiffs' trademark, dilute its product identity, and prevent it from controlling its reputation and goodwill with the public.

73.     Defendants' actions are likely to cause the public to conclude incorrectly that Defendant's Related Services come from Plaintiff, which will damage both Plaintiff and the public.

74.     Defendants' unauthorized use of PTSS's identical mark in interstate commerce as described above constitutes passing off, and is likely to cause consumer confusion, mistake or deception.

75.     Defendants' marketing and sale of their Related Services using the "THE SENIOR STORE" mark infringes Plaintiff's common law trademark "THE SENIOR STORE" in violation of 15 U.S.C. § 1125(a).

76.     As a direct and proximate result of Defendants' trademark infringement, Plaintiff has suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income profits and goodwill.

77.     As a direct and proximate result of Defendants' infringement of Plaintiff's "THE SENIOR STORE" mark, Plaintiff has been damaged.  Plaintiff is thus entitled to recovery of damages, multiple damages, reasonable attorney's fees, prejudgment interest and costs pursuant to 15 U.S.C. § 1117(a) and (b).

78.     PTSS has no adequate remedy at law.  If Defendants' willful and intentional acts of passing off are not enjoined, PTSS will continue to suffer immediate and continuing irreparable harm and injury to its reputation and goodwill associated with its "THE SENIOR STORE" mark.

## COUNT THREE
## CYBERPIRACY

### (15 U.S.C. § 1125(d)(1))

79.     Plaintiff repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

80.     Defendant Nick Bolletino registered or caused to have registered the domain name www.theseniorstore.com as a part of a plan and scheme along with the other defendants to steal PTSS's identity and facilitate the online offering of services bearing the THE SENIOR STORE mark in interstate commerce to customers in the Delaware Valley Region.

81.     PTSS's THE SENIOR STORE mark was distinctive and entitled to protection at the time Defendant Nick Bolletino registered or caused to have registered the domain name www.theseniorstore.com.

82.     The www.theseniorstore.com domain name wholly incorporates Plaintiff's trademark THE SENIOR STORE  and is therefore confusingly similar to Plaintiff's THE SENIOR STORE trademark.

83.     Defendants registered the www.theseniorstore.com domain name with a bad faith intent to steal PTSS's identity and established reputation in the Delaware Valley Region to profit from the mark by illegally entering the market in direct violation of plaintiff's trademark rights.

84.     As a result of Defendants' bad-faith registration of www.theseniorstore.com domain name, Plaintiff may elect, at any time before final judgment is rendered, to recover an award of statutory damages in the amount of up to $100,000 per domain name, instead of actual damages and profits. 15 U.S.C. §1117(d).

## COUNT FOUR
## COMMON LAW TRADEMARK INFRINGMENT
### (Various States)

85.     Plaintiff repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

86.     This cause of action arises under the common law of the various states, including, New Jersey, the Commonwealth of Pennsylvania, and Delaware.

87.     PTSS's "THE SENIOR STORE" mark has been used by PTSS exclusively in the Delaware Valley Region in connection with the PTSS Services since at least as early as 2013.

88.     Plaintiff has built up valuable goodwill in its "THE SENIOR STORE" marks through its continuous use and promotion of its "THE SENIOR STORE" mark.

89.     Defendants' activities constitute use in commerce of Plaintiff's "THE SENIOR STORE" mark.

90.     Defendants' use of a trademark that is identical to PTSS's "THE SENIOR STORE" mark in connection with Defendants' sale, offers of sale, distribution, promotion and advertisements of Defendants' Related Services is likely to cause confusion, mistake and

deception to the public as to the affiliation, connection or association of Defendants with PTSS, and as to the origin, sponsorship or approval of Defendants' Related Services by PTSS.

91.     Defendants activities tend to and do falsely create the impression that PTSS is not the true owner of the rights to the "THE SENIOR STORE" mark and that PTSS is in fact the infringer.

92.     By Defendants' unauthorized acts, Defendants are directly infringing on PTSS's common law rights in its "THE SENIOR STORE" mark in violation of the common law of the various states, to the damage of PTSS and the unjust enrichment of Defendants.

## COUNT FIVE
## COMMON LAW UNFAIR COMPETITION

93.     Plaintiff repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

94.     This cause of action arises under the common law of the various states, including the New Jersey, Commonwealth of Pennsylvania, and Delaware.

95.     Defendants' conduct as described herein constitute unfair competition.

## COUNT SIX
## DECEPTION IN VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
## (N.J.S.A. § 56:8-2)

96.     Plaintiff repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

97.     Defendants' unauthorized use of marks identical and/or similar to PTSS's "THE SENIOR STORE" mark in advertising constitutes deceptive trade practices in violation of the New Jersey Consumer Fraud Act.

98.     Upon information and belief, the aforesaid infringement by Defendants was committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiffs' rights.

99.     The aforesaid infringement by Defendants has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Plaintiffs.

100.    Plaintiff has no adequate remedy at law.

## COUNT SEVEN
## BREACH OF FIDUCIARY DUTY

101.    Plaintiff incorporates each of the foregoing allegations by reference as if set forth at length herein.

102.    By virtue of their employment, and special trust and confidence placed in them by plaintiffs, defendants owed a fiduciary duty to plaintiffs.

103.    Defendants, while employed and otherwise serving PTSS in positions of trust and confidence, willfully and maliciously breached their fiduciary duties to PTSS and by committing the herein alleged faithless and disloyal acts, including upon information and belief, but not limited to, the following:

104.    Diverting business opportunities to themselves during their employment;

105.    Misappropriating PTSS' confidential, proprietary, and trade secret information for their own use; and

106.    Usurping PTSS' corporate opportunities and goodwill for themselves for use to compete with PTSS.

107.    By and through the conduct alleged herein, defendants have breached and continue to breach their fiduciary duties to PTSS.

108.    Plaintiff has suffered and continue to suffer tremendous injury and harm as a result of defendants' breaches.

## COUNT EIGHT
### CIVIL CONSPIRACY

109.    Plaintiff incorporates each of the foregoing allegations by reference as if set forth at length herein.

110.    While still working under PTSS's Agent Heirarchy, and/or on a contract basis to perform work for PTSS, the Individual Defendants conspired together with the intent to injure PTSS; specifically to: (a) take corporate opportunities rightfully belonging to PTSS's by absconding with the CRM system populated with customer leads by PTSS; (b) convert the Individual Defendants' knowledge and contacts acquired or developed while working with PTSS, (c) misappropriate the proprietary and confidential information of PTSS, including without limitation using their knowledge of PTSS's future expansion plans to target markets in which PTSS planned to expand operations, and (d) register and hold hostage PTSS's domain www.theseniorstore.com.

111.    In furtherance of their conspiracy, the Individual Defendants used all of PTSS's aforementioned information to brand a new company with PTSS's brand in direct competition with PTSS.

112.    As a direct and proximate result, PTSS has been damaged.

113.    PTSS entitled to an award of punitive damages and attorneys' fees for the Individual Defendants' malicious acts of conspiracy against it.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

1.     That Defendants, their parents, subsidiaries, officers, agents, employees, and all persons acting for, with, by, through or under them be enjoined and restrained, preliminarily during the pendency of this action and, thereafter, permanently, in the Delaware Valley Region:

a.     From using in any manner, the mark "THE SENIOR STORE", or any other mark which contains the term "THE SENIOR STORE" as to be likely to cause confusion, reverse confusion, deception or mistake, on or in connection with the distribution, advertising, promotion, provision, offering for sale or sale of any product or service (i) not emanating from Plaintiff or (ii) not authorized by Plaintiff to be offered or sold in connection with marks containing the term "THE SENIOR STORE";

b.     From passing off, inducing or enabling others to sell or pass off any goods or services as and for goods or services produced by Plaintiff, which are not in fact Plaintiff's goods or services, or not produced under the control and supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's "THE SENIOR STORE" mark;

c.     From committing any acts calculated to cause consumers to believe that (1) Defendants' goods and services are sold under the control or supervision of Plaintiff, or sponsored or approved by, connected with, guaranteed by, or produced under the control and supervision of Plaintiff, or (2) that Plaintiff's goods and services are sold under the control or supervision of Defendants, or sponsored or approved by, connected with, guaranteed by, or produced under the control and supervision of Defendants;

d.     From further infringing Plaintiff's "THE SENIOR STORE" mark and damaging Plaintiff's reputation and its goodwill in its "THE SENIOR STORE" mark; and

e.      From otherwise competing unfairly with Plaintiff in any manner.

2.      A declaration that Defendants' use of designation "THE SENIOR STORE" for the Related Services in the Delaware Valley Region areas constitutes unfair competition under the Lanham Act, unregistered trademark infringement, deception and unjust enrichment;

3.      That Defendants be required to deliver up to plaintiff destruction at Defendants' expense, all packaging, labels, signs, promotional materials, advertisements, and other communications to the public in the possession or under their control bearing thereon any material or representations that are or may be false or misleading concerning the source or origin of the products and services offered by Defendants, to the extent that such packaging, labels, signs, promotional materials, advertisements and other communications to the public are used in connection with the sale or offer for sale of services bearing THE SENIOR STORE trademark in the Delaware Valley Region;

4.      That Defendants cause the transfer of the www.theseniorstore.com domain to Plaintiff;

5.      That Defendants account for and pay over to Plaintiff any profits realized by Defendants by reason of Defendants' unlawful and willful acts as alleged herein;

6.      That Plaintiff be awarded actual damages in an amount to be proven at trial and punitive damages in an amount to be proven at trial;

7.      That the amount of damages awarded to Plaintiff be increased by a sum not exceeding three times the amount thereof as provided by law;

8.      That Plaintiff be awarded interest, including pre-judgment interest, on all damages sums;

9.      That Plaintiff be awarded damages in such an amount as is reasonable for Plaintiff to conduct marketing and advertising activities necessary to at least in part repair the damage done to its "THE SENIOR STORE" mark and brand by the actions of Defendants;

10.     That Plaintiff be awarded its costs and reasonable attorney's fees and have such other and further relief as the Court may deem equitable, including, but not limited to, any relief set forth under 15 U.S.C. §§ 1116-1118; and

11.     That Plaintiff have such other and further relief as the Court deems just and proper.

LAULETTA BIRNBAUM, LLC


By:   s/ Robert A. McKinley_____
      Gregory Lomax, Esq.
      Robert A. McKinley, Esq.
      591 Mantua Blvd., Suite 200
      Sewell, NJ 08080
      Tel: (856) 232-1600
      Fax: (856) 232-1601
      Email:  rmckinley@lauletta.com
              glomax@lauletta.com

      Attorneys for Plaintiff

Dated: January 16, 2019

## VERIFICATION

I, Patricia MacAdams, principal member of Plaintiff The Senior Store, LLC hereby declare that I have read the foregoing Verified Complaint and verify that the facts alleged therein are true to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 15, 2019.

PATRICIA MACADAMS

28